UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **BRANDT DEALER SERVICES LLC** | CIVIL ACTION |
| VERSUS | NO. 24-2264 |
| HANCOCK WHITNEY BANK | SECTION L (3) |

## ORDER & REASONS

Before the Court is Defendant Hancock Whitney Bank's Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). R. Doc. 8. Plaintiff Brandt Dealer Services, LLC opposes the Motion. R. Doc. 12. Defendant replied. R. Doc. 13. Considering the record, the briefing, and the applicable law, the Court now rules as follows.

### I. BACKGROUND

This case arises from alleged third-party fraud perpetrated against Plaintiff's checking account. Plaintiff is a LLC involved in the automobile dealership industry. R. Doc. 1-2 at 1. In June of 2020, Plaintiff opened a checking account with Defendant, Hancock Whitney Bank. *Id.* Plaintiff alleges that only two individuals were authorized to make withdrawals on the account: Jessica Brandt, Plaintiff's CEO, and Marlene Remondet, Plaintiff's chief financial officer. *Id.* Plaintiff alleges that in August of 2023, Ms. Remondet notified Plaintiff of suspicious activity in the checking account. *Id.* at 2. Plaintiff made further inquiries with Defendant and discovered that Defendant had debited its account to pay an invoice of a credit card issued in the name of Lindy Pousson Eshleman, "a person who had no role in Plaintiff's business." *Id.* Plaintiff alleges that "it was believed at the time that Lindy Pousson Eshleman was the wife of Roch Eshleman, who was employed in another of the affiliated Brandt group of automobile dealerships." *Id.* Plaintiff subsequently discovered that, in fact, multiple electronic transfers had been made from its account to accounts controlled by Lindy Pousson and Roch Eshleman over a period of many months. *Id.* These transfers were made using "a

1

network commonly called the Automated Clearing House ("ACH"). *Id.* Plaintiff contends that all these transfers were unauthorized and for charges which had no relation to Plaintiff or its business. *Id.* Overall, Plaintiff estimates that is has suffered losses of approximately $900,000.00. *Id.* at 3.

Plaintiff sued Hancock Whitney.[1] *Id.* It alleges that Defendant is liable under theories of breach of contract and unjust enrichment. *Id.* It also brings a negligence claim, alleging that Defendant "was negligent in its handling of Plaintiff's deposit account by allowing ACH payments without authorization and without notifying Brandt it was making these ACH payments." *Id.* Plaintiff also "reserved the right to plead other causes of action as discovery develops in the matter." *Id.* Plaintiff originally brought suit in state court, but Defendant removed on the basis of diversity jurisdiction. R. Doc. 1 at 1.

## II. PRESENT MOTION

Defendant moves to dismiss Plaintiff's suit pursuant to Federal Rule of Civil Procedure 12(b)(6). R. Doc. 8. Defendant contends that the Uniform Commercial Code ("UCC"), as adopted by Louisiana, lays out a unique statutory scheme governing how a plaintiff may recover from its bank for an unauthorized "funds transfer." R. Doc. 8-1 at 1. Defendant argues that this UCC remedy displaces all other theories of liability, such as breach of contract or negligence. *Id.* Thus, Defendant avers that Plaintiff can only bring a claim under the UCC. *Id.* at 4. However, Defendant also contends that any UCC claim is time-barred. *Id.* at 7. Defendant acknowledges that the relevant portion of the UCC provides that a Plaintiff may bring suit regarding an unauthorized funds transfer "within one year" of the date on which "the customer received notification reasonably identifying" the transaction. *Id.* But, it argues that when Plaintiff opened the checking account at issue, it contractually agreed to shorten this peremptive period. *Id.* at 8. First, the contract provided that:

---

[1] The alleged perpetrators of the unauthorized transactions, Lindy Pousson and Roch Eshleman, are not parties to this suit.

> you agree that we will not be liable for the problem if you have not reported the problem to us in a writing that is signed and dated by you within 30 days from when we first send or make the statement available to you containing the problem (except to the extent that the relevant law allocates responsibility otherwise).

R. Doc. 8-4 at 15. Further, the contract contained a "same wrongdoer" provision which provided that:

> you further agree that if you fail to provide us written notice of any unauthorized signatures, alterations, or any other problem in your account within 60 days of when we first send or make the statement available, you cannot assert a claim against us for any problem reflected in that statement (or in subsequent statements, if the problem is caused by the same wrongdoer) . . .

*Id.* Defendant alleges that it provided Plaintiff with monthly bank statements throughout the duration of the fraudulent transactions, from September of 2020 through October of 2023. R. Doc. 8-1 at 9. Defendant contends that Plaintiff only timely disputed the final transaction, a debit of $24,646.76, by reporting it to Defendant within 30 days of Plaintiff's receipt of the corresponding statement. *Id.* Defendant alleges that it has refunded this final payment to Plaintiff, but that all prior alleged unauthorized payments were not timely reported and are thus time-barred by contract. *Id.* Accordingly, Defendant argues that Plaintiff's UCC claim must also be dismissed. *Id.* at 10.

   Plaintiff opposes the motion. R. Doc. 12. First, as to preemption, it seems to concede that its breach of contract and unjust enrichment claims are preempted by the UCC, as it does not argue or otherwise brief the persistence of these claims. Plaintiff does, however, argue that its negligence claim should not be dismissed. *Id.* at 3-5. Although it admits that "the UCC may govern certain aspects of this case," it argues that "Brandt is entitled to discovery to further investigate the alleged unauthorized funds transfers." *Id.* at 5. Plaintiff maintains that discovery may reveal that Defendant "breached an independent duty of care," which would give rise to a negligence claim separate from its UCC claim. *Id.* Second, as to the applicable prescriptive period for its UCC claim, Plaintiff contends that the peremptive period should not begin to run from the date Defendant alleges it sent the statements. *Id.* at 6. Plaintiff avers that "personnel of Hancock Whitney had extensive interaction

3

with the individual who is alleged to have stolen these funds and who actually received the monthly statements from Defendant." *Id.* Further, it avers that "[a]rguably, Hancock Whitney's monthly bank statements did not reasonably identify the payment order nor provide sufficient information to alert Brandt to the fraudulent nature of the transfers." *Id.* at 7. Overall, it alleges that it was not aware of the unauthorized transactions until it conducted its own internal audit and received more information from Defendant in October of 2023. *Id.* Thus, it asserts that its UCC claim is timely. *Id.*

Defendant replied, asserting that Plaintiff's argument to retain its negligence claim is an attempt to circumvent displacement, "which would entirely undermine the policies and purposes of the UCC." R. Doc. 13 at 3. Finally, it notes that Plaintiff's contention that it did not know about the alleged fraudulent transaction until October of 2023 is immaterial, as the peremptive periods began to run when Plaintiff received its bank statements, regardless of whether it actually read the statements or became aware of the fraud. *Id.* at 5.

### III. LEGAL STANDARD & CONSIDERATION OF ATTACHED EVIDENCE

#### A. Motion to Dismiss Standard

Federal Rule of Civil Procedure 12(b)(6) provides that an action may be dismissed "for failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2008)). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 556. A claim is plausible on its face when the plaintiff has pled facts that allow the court to "draw a reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 570. Although a court must liberally construe the complaint in light most favorable to the plaintiff, accept the plaintiff's allegations as true, and draw all reasonable inferences in favor of the plaintiff, *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir.

4

1996), courts "do not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *Arias-Benn v. State Farm Fire & Cas. Co.*, 495 F.3d 228, 230 (5th Cir. 2007) (quoting *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005)).

### B. Consideration of Documents Outside the Petition

Generally, a court may not look beyond the plaintiff's complaint when deciding whether to grant a 12(b)(6) motion. *Scanlan v. Tex. A&M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003); *Williamson v. Tucker*, 645 F.2d 404, 412-13 (5th Cir. 1981). There is, however, an exception to the standard rule. The Fifth Circuit in *Collins v. Morgan Stanley Dean Witter* held that a district court may rely on evidence outside the complaint without converting the Rule 12(b)(6) motion into a summary judgment motion when the evidence is: (1) attached to the motion, (2) referred to in the complaint, and (3) central to the plaintiff's claim or is subject to judicial notice. 224 F.3d 496, 498-99 (5th Cir. 2000); *George v. SI Group, Inc.*, 36 F.4th 611, 619 (5th Cir. 2022). "The court has 'complete discretion' to either accept or exclude the evidence for purposes of the motion to dismiss." *Knight v. Am. Bankers Ins. Co. of Fla.*, No. CV 23-4834, 2024 WL 3742689, at *2 (E.D. La. Aug. 7, 2024) (citing *Isquith v. Middle South Utilities, Inc.*, 847 F.2d 186, 196 n.3 (5th Cir. 1988)).

Here, Defendant attaches two exhibits to its motion: (1) the contract which it alleges Plaintiff agreed to when it opened the bank account at issue and (2) the monthly bank statements which it alleges it sent to Plaintiff. As to the contract, the Court finds that this evidence is properly considered on the instant 12(b)(6) motion. Plaintiff specifically alleges in its Petition that "Hancock Whitney breached its contract of deposit with Brandt." R. Doc. 1-2 at 4. The proposition that the parties contracted wherein Plaintiff opened a checking account with Defendant is "central" to Plaintiff's claim. *Collins*, 224 F.3d at 498. Accordingly, the Court may consider the agreement.

However, the Court is not persuaded that the bank statements are properly considered on a 12(b)(6) motion. Although Plaintiff refers to unauthorized transactions in its complaint, it never

mentions the bank statements themselves. Thus, the evidence is not itself "referred to in the complaint." *Id.* Furthermore, even if the Court did consider the bank statements, the result would remain the same because, as described more fully below, the Court finds that Plaintiff's allegations are sufficient to state a claim.

IV. ANALYSIS

The parties dispute two issues: (1) whether Plaintiff's UCC claim is time-barred and (2) whether the availability of a UCC remedy preempts all of Plaintiff's other claims. The Court takes each in turn.

**A. Plaintiff's UCC Claim is Not Time-Barred Because Parties Cannot Contractually Shorten the One-Year Peremptive Period Mandated by the UCC.**

Defendant contends that any UCC claim to recover the unauthorized payments is time-barred because Plaintiff contractually agreed that it must report unauthorized payments to the bank within 30 days of Plaintiff's receipt of its bank statement. Although Plaintiff does not specifically invoke the UCC in its Petition, Louisiana follows a "fact-pleading system" whereby plaintiffs are not required to "specifically label a claim" as such. *See Greemon v. City of Bossier City*, 2010-2828, p. 14 (La. 7/1/11); 65 So. 3d 1263, 1271 ("Plaintiffs should be awarded any recovery allowable under any legal theory justified by the facts the plaintiff has alleged in his or her petition."). Accordingly, Plaintiff's failure to specifically plead entitlement to a UCC remedy does not impact its ability to bring such a claim. The Court briefly summarizes the applicable UCC remedy before explaining the split of authority[2] regarding whether parties can contractually shorten the applicable peremptive period.

---

[2] Because the UCC is a state statutory regime, Louisiana law is applicable. However, the Louisiana Supreme Court has held that "in deciding novel issues under the UCC, 'we are authorized to consider the manner in which the courts of our sister states have decided such cases.'" *First Nat'l Bank of Picayune v. Pearl River Fabricators, Inc.*, 2006-2195 (La. 11/16/07), 971 So. 2d 302; *see also Brooks v. Transamerica*, 45,833 (La. App. 2 Cir. 02/02/11), 57 So. 3d 1153, 1159 ("As such, jurisprudence from other jurisdictions is instructive when interpreting UCC provisions"). The parties do not cite, nor could the Court locate, any Louisiana cases deciding whether the parties can contractually shorten the statutory peremptive period in a Chapter 4A UCC case. Although Defendant cites a Louisiana case regarding the parties' ability to shorten the peremptive period in a Chapter 4 case, this is not particularly helpful given the differences between Chapter 4 and Chapter 4A, as explained more fully below. Thus, the Court has looked to other jurisdictions for guidance.

### i. *Chapter 4A of the UCC: Remedy for Unauthorized Funds Transfers*

The parties agree that this dispute falls within the ambit of Chapter 4A of the UCC, as codified in Louisiana law, which provides a cause of action for customers to sue their banks regarding "unauthorized funds transfers." La. Stat. Ann. § 10:4A-101 *et seq*. An unauthorized funds transfer is one that is not actually made by the person "identified as sender." *See* § 4A-202(a). Essentially, unauthorized funds transfers are those fraudulently made by a third party. *See* § 4A-204 cmt 1. ("[U]nauthorized payment orders will almost always involve fraud.").

"The default rule of the UCC is that the bank will bear the loss of any unauthorized funds transfer." *Regatos v. N. Fork Bank*, 257 F. Supp. 2d 632, 640 (S.D.N.Y. 2003) (citing § 4A–204(a)). However, "[t]hat rule is subject to a broad exception." *Id.* Where the bank and its customer agree to a "security procedure" through which the bank will process payment orders, then payment orders processed through that procedure will be considered "verified" and "effective as the order of the customer" regardless of whether the orders were in fact authorized. § 4A–202(b). To qualify for this exception, the security procedure must be "commercially reasonable," and the bank must have accepted the payment order "in good faith and in compliance with the bank's obligations under the security procedure." *Id.* Overall, if a fraudulent payment order is "effective as the order of the customer" because the bank met all requirements regarding the agreed-upon security procedure, then the customer cannot recover the payment from the bank. *Id.* § 4A–204(a).

However, § 4A-204(a) provides that if the payment order was not "verified" using such a commercially reasonable security procedure, or if the bank failed to comply with the procedure or act in good faith, then "the bank shall refund any payment of the payment order received from the customer." *Id.* Subsection (b) further provides that "the obligation of a receiving bank to refund payment . . . may not otherwise be varied by agreement." *Id.* § 4A-204(b).

7

Finally, this Section also addresses whether the customer can recover interest on the refunded payment order. It provides that if the order is unauthorized and unverified, then the bank:

> shall pay interest on the refundable amount calculated from the date the bank received payment to the date of the refund. However, the customer is not entitled to interest from the bank on the amount to be refunded if the customer fails to exercise ordinary care to determine that the order was not authorized by the customer and to notify the bank of the relevant facts within a reasonable time not exceeding ninety days after the date the customer received notification from the bank that the order was accepted or that the customer's account was debited with respect to the order.

Commentary to this section further clarifies that:

> The customer has a duty to exercise ordinary care to determine that the order was unauthorized after it has received notification from the bank, and to advise the bank of the relevant facts within a reasonable time not exceeding 90 days after receipt of notification . . . . The only consequence of a failure of the customer to perform this duty is a loss of interest on the refund payable by the bank.

*Id.* cmt 1.

Overall, the statutory scheme contemplates that a customer may recover payment orders which are both unauthorized and unverified by proper security procedure, *regardless* of whether the customer has acted reasonably by reviewing her statement and notifying the bank of the unauthorized nature of the transactions. However, the customer may only recover interest on the payments if she properly reviews her statement and reports issues to the bank within a reasonable time.

## ii. Chapter 4A's Statute of Repose

Section 4A-505 provides a "statue of repose for objecting to debits made to the customer's account" pursuant to the provisions above. § 4A-505 cmt 1. It provides that:

> If a receiving bank has received payment from its customer with respect to a payment order issued in the name of the customer as sender and accepted by the bank, and the customer received notification reasonably identifying the order, the customer is precluded from asserting that the bank is not entitled to retain the payment unless the customer notifies the bank of the customer's objection to the payment within one year after the notification was received by the customer.

8

Essentially, § 4A-505 provides the "peremptive period"[3] for the cause of action established by § 4A-204, that is, the customer's right to recover a payment order that is both unauthorized and unverified.

### iii. The Confused State of the Law

Here, Defendant contends that Plaintiff has contractually agreed to shorten the one-year peremptive period provided in § 4A-505 down to only 30 days, meaning that its UCC claim is time-barred. However, courts are split on whether parties may contractually shorten this peremptive period.

Some courts allow such contracting. *See Priority Staffing, Inc. v. Regions Bank*, No. 11-0667, 2013 WL 5462239, at *3 (W.D. La. Sept. 30, 2013); *Bonnema v. Heritage Bank NA-Willmar*, No. 01-1940, 2002 WL 1363985, at *5 (Minn. Ct. App. June 19, 2002). First, these courts point to another portion of Chapter 4A, § 4A-501, which provides that, "[e]xcept as otherwise provided in this Chapter, the rights and obligations of a party to a funds transfer may be varied by agreement of the affected party." And, these courts reason, § 4A-505 does not expressly "disallow a contractual limitation of the 1–year time period for disputing payment orders." *Priority Staffing*, 2013 WL 5462239, at *3. Accordingly, they conclude that such contractual modification is permissible. *Id.*; *Bonnema*, 2002 WL 1363985, at *5.

Other courts find that when read as a whole, the statute indicates that parties may *not* shorten the peremptive period by contract. *See JESCO Constr. Corp. v. Wells Fargo Bank, N.A.*, 579 F.

---

[3] Because commentary to this provision describes it as a "statute of repose," it imposes a "peremptive period" rather than a "prescriptive period." *See Coleman v. OFS, Inc.*, 554 F. App'x 251, 253 (5th Cir. 2013) ("'Prescriptive periods' are also known as statutes of limitation, while 'peremptive periods' are also known as statutes of repose."). The Fifth Circuit has explained that:

> A statute of limitations extinguishes the right to prosecute an accrued cause of action after a period of time. It cuts off the remedy. It is remedial and procedural. A statute of repose limits the time during which a cause of action can arise and usually runs from an act of a defendant. It abolishes the cause of action after the passage of time even though the cause of action may not have yet accrued.

*Id.*

Supp. 3d 827, 836 (S.D. Miss. 2022); *Regatos*, 257 F. Supp. 2d at 644. First, these courts note that § 4A-204, which lays out the underlying refund rule, provides that "the obligation of a receiving bank to refund payment . . . may not otherwise be varied by agreement." *Regatos*, 257 F. Supp. 2d at 642. Thus, they reason, "the one-year notice provision strongly implicates the *invariable* right of refund provided" in §4A-204. *Id.* (emphasis in original). And, "surely, a very short notice period would effectively eviscerate the absolute duty" created by this section. *Id.*; *see also Jesco*, 579 F. Supp. 3d at 836 (observing that "[w]hen analyzing the statutory framework as a whole, it becomes clear that [§ 4A-501] and [§ 4A-505] are meant to interact with § 4A-204").

    *iv. Discussion*

    The Court will follow *Regatos* and *Jesco* in finding that the one-year peremptive period cannot be modified by agreement. As those courts observed, § 4A-204 explicitly states that the customer has an invariable right to a refund where the payment order is unauthorized and unverified by adequate security procedure. Allowing the parties to contractually limit this right goes against the express directive of the statute that the bank's "obligation to refund" cannot be "varied by agreement." § 4A-204. Furthermore, commentary to § 4A-204 explains that "the only consequence of a failure of the customer to perform [her] duty"—that is, the duty to reasonably review bank statements and report unauthorized transactions to the bank—"is a loss of interest on the refund payable by the bank." Allowing the parties to contractually shorten the peremptive period to 30 days is inconsistent with this directive that the "only" consequence for the customer's failure to promptly review their bank statements is a loss of interest, not loss of the refunded payment itself. Accordingly, the text of the statute supports the conclusion that the parties may not alter 1-year statutory peremptive period by contract.

    Moreover, the Court notes that the bank—and not the customer—will frequently be the party to draft the contract. This seems to be the case here: Defendant maintains that it "*mailed* the Deposit

Account Agreement to Plaintiff" and "[n]either Plaintiff nor anyone on its behalf has *objected* to the terms of the Deposit Account Agreement." R. Doc. 8-3 at 2 (emphasis added). Allowing banks to draft contracts which modify the customer's right to a refund by extinguishing that right eleven months earlier than contemplated would be contrary to the text and purpose of the statute.

Defendant's arguments to the contrary are unpersuasive. Defendant cites *Groue v. Capital One*, a Louisiana case in which the court held that the parties could, in fact, shorten a one-year peremptive period in a UCC case. 2010-0476 (La. App. 1 Cir. 9/10/10), 47 So. 3d 1038, 1040. However, this case is not instructive, as it was decided in the context of Chapter 4, which covers disputes regarding "bank deposits and collection" issues such as forged checks, not Chapter 4A, the applicable provision covering the instant "funds transfer" dispute. Unlike Chapter 4A, where the customer has an invariable right to a refund regardless of whether they reasonably reviewed their bank statements and timely reported issues to the bank, Chapter 4 *requires* such reasonable review and reporting for the customer to make any recovery at all. *See* § 4-406. (providing that the customer must "exercise reasonable promptness in examining the statement or items to determine whether any payment was not authorized" and must "promptly notify the bank of the relevant facts" to recover any portion of the deposit). Quite simply, because "funds transfers are inherently different from other commercial transactions, the provisions of Article 4A do not mirror the rest of the UCC." *Regatos*, 257 F. Supp. 2d at 643. Thus, decisions in the Chapter 4 context are only instructive to the extent that they reinforce the Court's conclusion that Chapter 4A is unique in imposing an invariable right to refund which may not be cut off by a dramatically shortened peremptive period. Overall, the Court finds that Plaintiff has plead a valid UCC claim as to any funds transfers which it disputed within one year of the date on which it "received notification reasonably identifying the order." § 4A-505.

Finally, the Court observes that dismissal of any part of Plaintiff's UCC claim is not appropriate at this stage. Plaintiff seeks recovery of payments that occurred more than one year

11

before Plaintiff disputed the transactions in October of 2023. However, the one-year peremptive period only begins to run when the Plaintiff "received notification" of the transfers within the meaning of § 4A-505. At this stage, the Court cannot determine when Plaintiff "received notification" of the transactions. Although Defendant alleges that it provided Plaintiff with monthly bank statements which showed the unauthorized transactions, the Court has already explained, above, that these bank statements are not referred to in Plaintiff's petition and thus not properly considered on a motion to dismiss. Even if the Court did consider the evidence, Plaintiff raises questions regarding whether it actually received the statements Defendant attaches. *See* R. Doc 12 at 6 (explaining that the "individual who is alleged to have stolen these funds" is the person "who actually received the monthly statements from Defendant"). The Court must assume, at this stage, that Plaintiff was not actually receiving the bank statements from Defendant. Thus, Plaintiff has adequately plead a UCC claim as to all disputed funds transfers, not only those arising in the one-year period preceding October of 2023, when it disputed the transfers.

### B. Plaintiff's Negligence Claim is Preempted by the UCC as Plead

Next, the parties dispute whether Plaintiff has plead an independent negligence claim which is not preempted by the UCC. Section 1-103(b) of the UCC, as enacted by Louisiana, provides that: "[u]nless displaced by the particular provisions of this Title, the other laws of Louisiana supplement its provisions." Comment 2 to this provision further clarifies that:

> [W]hile principles of common law and equity may supplement provisions of the Uniform Commercial Code, they may not be used to supplant its provisions, or the purposes and policies those provisions reflect, unless a specific provision of the Uniform Commercial Code provides otherwise. In the absence of such a provision, the Uniform Commercial Code preempts principles of common law and equity that are inconsistent with either its provisions or its purposes and policies.

The Comment, which was added in 2006, further explains that some decisions in other courts have interpreted UCC displacement too narrowly:

> Some decisions applied other law in situations in which that application, while not inconsistent with the text of any particular provision of the Uniform Commercial Code, clearly was inconsistent with the underlying purposes and policies reflected in the relevant provisions of the Code. *See, e.g.*, *Sheerbonnet, Ltd. v. American Express Bank, Ltd.*, 951 F. Supp. 403 (S.D.N.Y. 1995). In part, this difficulty arose from Comment 1 to former Section 1-103, which stated that this section indicates the continued applicability to commercial contracts of all supplemental bodies of law except insofar as they are explicitly displaced by this Act. The "explicitly displaced" language of that Comment did not accurately reflect the proper scope of Uniform Commercial Code preemption, which extends to displacement of other law that is inconsistent with the purposes and policies of the Uniform Commercial Code, as well as with its text.

Overall, it is clear that Louisiana UCC preemption is fairly expansive, encompassing preemption of any additional claim that is inconsistent not only with the text of the UCC, but also with its overarching "purposes and policies."

"Louisiana courts have not specifically addressed Chapter 4A displacement." *Ducote v. Avery Interests, LLC*, No. 15-256 (La. App. 5th. Cir. 4/24/15). However, other jurisdictions have held that "[f]or Article 4A purposes, the critical inquiry is whether its provisions protect against the type of underlying injury or misconduct alleged in a claim." *Ma v. Merrill Lynch, Pierce, Fenner, & Smith*, 597 F.3d 84, 90 (2d Cir. 2010). And, these other courts have found that the plaintiff's negligence claims were preempted by Chapter 4A under nearly identical facts to those presented here. For example, in *Ma v. Merrill Lynch, Pierce, Fenner, & Smith*, the court held that the plaintiffs' negligence claims were preempted by the UCC where they alleged that "Defendants . . . breached their fiduciary obligations by . . . failing to contact Plaintiffs about the transactions taking place in their account and allowing funds to be removed from the accounts without proper authorization." *Id.* The Court explained that "[s]ince all of [the plaintiffs'] claims are, at their core, assertions that he did not order or approve any of the disputed electronic transfers of funds from his accounts, we are bound to recognize the rights and duties [the UCC] provides for precisely these circumstances." *Id.*; *see Gold v. Merrill Lynch & Co.*, No. 09-318 2009 WL 2132698, at *5 (D. Ariz. July 14, 2009) ("Plaintiff's Complaint alleges that Defendant breached duties related only to the payment of

unauthorized transfers. As discussed above, Article 4A of the [UCC] specifically addresses such unauthorized transfers and provides an exclusive remedy for them.").

Here, identically, Plaintiff alleges that that Defendant "was negligent in its handling of Plaintiff's deposit account by allowing ACH payments [funds transfers] without authorization and without notifying Brandt it was making these ACH payments." R. Doc 1-2 at 3. Accordingly, the Court finds that Plaintiff's negligence claim, in its present posture, focuses only on conduct that is preempted by the UCC. Thus, the claim must be dismissed. Nevertheless, the Court understands Plaintiff's position that further discovery is necessary to fully understand the circumstances of the case. Accordingly, the Court will dismiss Plaintiff's negligence claim without prejudice. If discovery supports claims that are truly "supplemental" to Plaintiff's UCC claim and not "inconsistent with the purposes and policies" of the UCC, the Court will consider a timely and appropriate request for amendment of Plaintiff's Petition to re-raise a negligence claim.

However, the Court cautions Plaintiff that Louisiana endorses an especially broad view of UCC preemption. In its briefing, Plaintiff relies on the case *Squeeze Me Once, LLC v. SunTrust Bank,* in which the court allowed various supplemental negligence claims to persist alongside Plaintiff's Chapter 4A UCC claim. No. 19-787, 2020 WL 12968001, at *10 (M.D. La. Aug. 3, 2020). However, that case applied the North Carolina version of the UCC, which endorses a narrower view of preemption than Louisiana. *Id.* Specifically, commentary to the North Carolina UCC preemption provision explains that other state law is not preempted unless it is "explicitly displaced" by the UCC. N.C. Gen. Stat. Ann. § 25-1-103. But commentary to Louisiana's version of the UCC expressly rejects this language and its narrower view of preemption. *See* § 1-103(b) cmt 1 ("The 'explicitly displaced' language of that Comment did not accurately reflect the proper scope of Uniform Commercial Code preemption."). Rather, Louisiana law extends UCC preemption more broadly to claims that, while not directly preempted, would be inconsistent with UCC policy and

14

purpose. *Id.* Accordingly, the Court emphasizes that *Squeeze Me Once* is not especially instructive on the issue of Louisiana UCC preemption.

## V. CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that Defendant's motion to dismiss is **DENIED** in part and **GRANTED** in part. The motion is **DENIED** in that the Court finds that Plaintiff has plead a viable UCC claim. The motion is **GRANTED** in that the Court will dismiss Plaintiff's non-UCC claims. Plaintiff's negligence claim is dismissed without prejudice.

New Orleans, Louisiana this 15th day of January, 2025.

_____
Eldon E. Fallon
U.S. District Court Judge